1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Larry D. Russell, D.D.S.; Paulette Russell, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>Mountain Park Health Center Properties, LLC, an Arizona Limited Liability Corporation, L.L.C. doing business as Mountain Park Health Center; Sharon Bader, D.D.S., an individual; John Does I-V; and Black and White Corporations I-V,<br><br>Defendants. | No. CV 07-0875-PHX-NVW<br><br>**ORDER** |

Before the court is Defendants' Summary Judgment Motion on All Claims. (Doc. # 43.) The motion is granted for the following reasons.

**I. Background**

Defendant Mountain Park Health Center ("MPHC") hired Plaintiff Larry D. Russell ("Dr. Russell") in May of 2004 to work as a staff dentist. (Doc. # 44-2, Ex. 2 at 37.) MPHC terminated his employment in October of 2005. (Doc. # 44-4, Ex. 5.) Russell's complaint asserts several violations of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-2; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634; 42 U.S.C. § 1981; and the Arizona Civil Rights Act ("ACRA"), A.R.S. §§ 41-1461 through 41-1467. He alleges that he was harassed on the basis of race and age

by his supervisor, Defendant Sharon Bader ("Dr. Bader"). He further alleges that he was terminated on the basis of race and age, and in retaliation for complaining about the discrimination and harassment that he endured. Dr. Russell's complaint also includes counts for violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601–2654, negligent supervision, intentional and negligent infliction of emotional distress, breaches of contract and the covenant of good faith and fair dealing, and violation of "public policy."

**II.  Legal Standard for Summary Judgment**

Rule 56(c), Fed. R. Civ. P., provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A "genuine issue" of material fact will be absent if, "viewing the evidence and inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law." *Jones v. Halekulani Hotel, Inc.*, 557 F.2d 1308, 1310 (9th Cir. 1977); *see also Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1111 (9th Cir. 2001). Any supporting affidavits must be based on personal knowledge, and the facts presented therein must be admissible into evidence. Fed. R. Civ. P. 56(e). Conclusory and speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nature of this responsibility varies, however, depending on whether the movant or the non-movant would bear the burden of persuasion at trial with respect to the issue at hand. If, as here,

- 2 -

1  the burden of persuasion at trial would be on the party moving for summary judgment,
2  that party may satisfy its initial burden of production only by showing that it would be
3  "entitle[d] . . . to a directed verdict if the evidence went uncontroverted at trial."
4  *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992); *cf. Berry v. Bunnell*, 39 F.3d
5  1056, 1057 (9th Cir. 1994) ("A directed verdict is proper when the evidence permits only
6  one reasonable conclusion.").

7  Where the moving party has met its initial burden with a properly supported
8  motion, the party opposing the motion "may not rest upon the mere allegations or denials
9  of his pleading, but . . . must set forth specific facts showing that there is a genuine issue
10 for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary
11 judgment is appropriate against a party who "fails to make a sufficient showing to
12 establish the existence of an element essential to that party's case, and on which that party
13 will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322; *Matsushita Elec.*
14 *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmovant's showing of
15 "some metaphysical doubt" as to material facts insufficient); *see also Citadel Holding*
16 *Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). Summary judgment is not appropriate
17 when the nonmoving party identifies or produces evidence from which a reasonable juror,
18 drawing all inferences in favor of the nonmoving party, could return a verdict in the
19 nonmoving party's favor. *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir.
20 1999).

21 "The district judge is not required to comb the record to find some reason to deny a
22 motion for summary judgment." *Forsberg v. Pacific Northwest Bell Tel. Co.*, 840 F.2d
23 1409, 1418 (9th Cir. 1988). Rather, the moving party must cite to a separate statement of
24 facts, and that separate statement of facts must refer to a specific admissible portion of the
25 record that supports the fact asserted. L.R. Civ. 56.1(a). In response, the adverse party
26 must also cite to a separate statement of facts that sets forth–

for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed.

L.R. Civ. 56.1(b). Each assertion of fact in the moving party's separate statement of facts that is not controverted in this manner "shall . . . be deemed admitted for purposes of the motion for summary judgment." *Id.*

**III.  Dr. Russell's Response Does Not Conform With L.R. Civ. 56.1(b)**

Dr. Russell's brief in response to Defendants' motion for summary judgment does not cite to a separate statement of facts. He did, however, submit a Response to Defendants' Statement of Facts (doc. # 49) and a Separate Statement of Facts (doc. # 47). His response to the Defendants' statement of facts simply lists a number of paragraphs that he does not oppose, and then summarily states that he objects to the remainder of Defendants' statement of facts "on the basis that they are not relevant, are hearsay, assume facts not in evidence, lack foundation, they are conclusory, and they misstate the evidence." Such a response does not meet the requirements of Local Rule 56.1(b), which requires the adverse party to respond to each of the moving party's assertions of fact in a separately numbered paragraph, and more importantly, to provide "a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed."

Dr. Russell's Separate Statement of Facts does not cure this deficiency. His separate statement sets forth additional facts presumably precluding summary judgment; it does not directly respond to Defendants' statement of facts. Furthermore, of the nineteen numbered paragraphs in his Separate Statement of Facts, Dr. Russell provides only two specific citations to the record, in paragraphs eleven and twelve.[1] The remainder of the statement's paragraphs either cite nothing at all, or simply cite to the

---

[1] Paragraphs eight and nine purport to cite to specific portions of Dr. Russell's declaration. However, the paragraphs cited are in no way relevant to the assertion made in the statement of facts.

- 4 -

1 "Russell Declaration" or the "Russell Deposition" without reference to paragraphs or
2 page numbers. Dr. Russell's deposition is a 330 page document submitted by
3 Defendants. The court is not required to comb through this deposition to find reasons to
4 deny summary judgment against Dr. Russell.

5      Dr. Russell's declaration is a shorter document, so out of an abundance of caution
6 and despite the glaring deficiencies in his pleading, the court will consider Dr. Russell's
7 declaration in response to Defendants' statement of facts. Accordingly, each of
8 Defendants' statement of facts that is not squarely contradicted by an assertion of fact
9 made by Dr. Russell in his declaration is deemed admitted for purposes of this motion.

10 **IV. Termination Based on Race or Age**

11      Under any of the cited statutes, to prevail on his claim that he was terminated
12 because of race or age discrimination, Dr. Russell must first make out a prima facie case
13 of discrimination. To do so, he must show "that (1) he belongs to a protected class, (2) he
14 was qualified for the position he held . . . , (3) he was terminated or demoted from . . . that
15 position, and (4) the job went to someone outside the protected class." *Coghlan v. Am.*
16 *Seafoods Co. LLC*, 413 F.3d 1090, 1094 (9th Cir. 2005) (citing *St. Mary's Honor Center*
17 *v. Hicks*, 509 U.S. 502, 506 (1993)); *Storey v. Chase Bankcard Services*, 970 F. Supp.
18 722, 724 (D. Ariz. 1997) (applying federal standards to claim under ACRA). Once a
19 plaintiff has made a prima facie case of discrimination, the burden shifts to the defendant
20 to present "evidence sufficient to permit the factfinder to conclude that the employer had
21 a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* The
22 plaintiff must then persuade the factfinder that the employer's explanations are "actually a
23 pretext for discrimination," *id.*, or in context of a retaliation claim, that they are "merely a
24 pretext for impermissible retaliation." *Winarto v. Toshiba Am. Elecs. Components, Inc.*,
25 274 F.3d 1276, 1284 (9th Cir. 2001).

26
27
28

Defendants explain that Dr. Russell was fired for deficient work performance.[2] Specifically, they have adduced evidence, and Dr. Russell's declaration does not contradict, that he was slow to respond to patients, that he would leave patients waiting 45 minutes or longer while he used his cell phone, that he violated attendance and leave policies, that his co-workers complained that he was not respectful of them, that in the summer of 2005 MPHC received over ten complaints from its staff and dentists that Dr. Russell's patient care was inadequate, and that an independent expert dentist reviewed some of Dr. Russell's patient charts and concluded that his performance "fell below an acceptable standard of care." (Doc. # 44-1, ¶¶ 5, 7–10, 12, 20.) Dr. Russell therefore has the burden to prove that this explanation is actually a pretext for discrimination or retaliation.

Dr. Russell has failed to adduce evidence sufficient for a reasonable juror to find that Defendants' explanation is merely a pretext for discrimination. The same people who interviewed and hired Dr. Russell, including his supervisor Sharon Bader, recommended his termination. (Doc. ## 44 ¶ 23; 44-3, Ex. 2 at 41.) Under the law of our circuit, Defendants are therefore entitled to "a strong inference that there was no discriminatory action." *Coughlan*, 413 F.3d at 1096 (quoting *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267 (9th Cir. 1996)). The only evidence that Dr. Russell has adduced for purposes of this motion is his declaration and the two factual assertions in paragraphs eleven and twelve of his separate statement of facts. In his declaration, Dr. Russell states that Dr. Bader told him that he was "a big black man," and that he "can be intimidating." (Doc. # 48, ¶ 18.) Defendants' evidence clarifies that Dr. Bader made this comment in

---

[2] Defendants have not argued that Dr. Russell has failed to make out a prima facie case of discrimination. It is highly doubtful that he has fulfilled this requirement. Dr. Russell's failure to perform his job satisfactorily may mean that he was not qualified for the position, and he has not provided any proof that he was replaced by anyone outside of the protected class. In any event, summary judgment is appropriate because Dr. Russell has failed to show that Defendants' explanation for his termination is a pretext for discrimination or retaliation.

- 6 -

1 August of 2004. (Doc. # 44-2, Ex. 2 at 106–109.) Dr. Russell has provided no evidence
2 that this comment was in any way related to the decision to terminate him. It was a
3 single, isolated comment made almost a year before Dr. Russell was terminated in
4 October of 2005. It is therefore a "stray remark" that is weak evidence and is not enough
5 to overcome the strong inference that Dr. Russell's termination was not based on his race
6 or age. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996); *Nesbit*
7 *v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993); *Merrick v. Farmers Ins. Group*, 892
8 F.2d 1434, 1438–39 (9th Cir. 1990).

9      Nothing else that Dr. Russell asserts in his declaration or separate statement of
10 facts could support a finding that Defendants' explanation is merely a pretext for
11 discrimination. The mere fact that Dr. Russell began complaining about discrimination
12 sometime in August of 2004 (doc. # 48 ¶ 19), more than one year before he was fired,
13 does not support an inference that his termination was caused by his complaints.
14 *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002). Dr. Russell
15 also points out deficiencies in the independent expert review of his patient charts, states
16 that one of the patient complaints against him was falsified, and claims that he was asked
17 demeaning and simplistic questions. (*Id.* ¶¶ 8–9, 12–15, 17.) He also alleges that Dr.
18 Bader admitted that she questioned his judgment without cause, and that he was harassed
19 for creating a log to properly account for medications that were dispensed. (Doc. # 47 ¶¶
20 11, 12.)[3] However, even accepting all of these allegations as true, they do not show that
21 Dr. Russell's termination was based on his race or age, or was in retaliation for his
22 complaints about discrimination and harassment. *Hicks*, 509 U.S. at 514 ("[N]othing in
23 law would permit us to substitute for the required finding that the employer's action was
24 the product of unlawful discrimination, the much different (and much lesser) finding that

---

[3] The portions of Dr. Russell's deposition that Dr. Russell cites hardly support the facts asserted, but even taking the facts asserted as true, they do not support the conclusion that Defendants' explanation is a pretext for discrimination.

- 7 -

the employer's explanation of its action was not believable."). Accordingly, Defendants' are entitled to summary judgment in their favor on this claim.

## V. Harassment

To prevail on a claim of harassment, Dr. Russell must prove that he was subjected to treatment on the basis of race or age that was so severe or pervasive that it altered the conditions of his employment and created an abusive working environment. *Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003). Defendants identify evidence showing that, apart from two of Dr. Bader's comments, none of the supposed harassing activity had anything at all to do with race or age. (Doc. # 44 ¶¶ 36–39.) Nothing in Dr. Russell's declaration contradicts Defendants' explanations. Therefore, the only evidence in the record that could potentially support Dr. Russell's harassment claim is Dr. Bader's comments about Dr. Russell being a "big black man" and "similar in age" to her father. Standing alone, these two comments are not so "extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "[O]ffhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* Defendants are therefore entitled to summary judgment in their favor on this claim.

## VI. Dr. Russell's Other Claims Are Wholly Unsupported

Defendants' motion requested summary judgment on all of Dr. Russell's claims and presented supporting evidence and legal argument. Dr. Russell's response fails to address the deficiencies pointed out by Defendants. He has therefore conceded summary judgment on his claims for negligent supervision, breach of contract and the covenant of good faith and fair dealing, negligent infliction of emotional distress, and violation of "public policy." L.R. Civ. 7.2(i).

Furthermore, Dr. Russell's response barely mentions his claims for violation of the Family and Medical Leave Act and intentional infliction of emotional distress. Dr. Russell asserts that MPHC's expert reviewed a biased sample of patient charts and so, somehow, "[t]heir use also evidences violation of the Family and Medical Leave Act."

- 8 -

1  (Doc. # 46 at 8.)  This single line is Dr. Russell's only argument on his claim for violation
2  of the Family and Medical Leave Act.  As explained above, he has directed the court to
3  no evidence that contradicts Defendants' explanation that he was terminated for
4  numerous concerns about his performance, which went well beyond the review conducted
5  by MPHC's independent expert.  He has failed to carry his burden to prove that he was
6  terminated because he took leave, and so summary judgment in the Defendants' favor is
7  appropriate.

8  Respecting Dr. Russell's claim of intentional infliction of emotional distress, he
9  argues that Dr. Bader's conduct was outrageous and extreme "in light of the nature of the
10 relationship[]."  (Doc. # 46 at 11).  Dr. Russell's declaration states that Dr. Bader, (1)
11 called him a "big black man," (2) said that he "can be intimidating," (3) said that she
12 would "put him in his place," (4) routinely asked him "demeaning and simplistic
13 questions" and gave him "simplistic dental protocol charts and documents in front of
14 other dentists;" (5) falsely accused him of disrespecting a hygienist; and (6) falsified a
15 patient complaint against him.  (Doc. # 48 ¶¶ 8–10, 17–18, 19.)  Even if believed, these
16 acts are not so extreme and outrageous to give rise to the tort of intentional infliction of
17 emotional distress.  *Mintz v. Bell Atl. Sys. Leasing Int'l*, 183 Ariz. 550, 554, 905 P.2d 559,
18 563 (Ct. App. 1995) (holding that failure to promote, "even if it was motivated by sex
19 discrimination or retaliation," does not state a claim for intentional infliction of emotional
20 distress because "[i]t is extremely rare to find conduct in the employment context that will
21 rise to the level of outrageousness necessary"); *Nelson v. Phoenix Resort Corp.*, 181 Ariz.
22 188, 199–200, 888 P.2d 1375, 1386–87 (Ct. App. 1994).

23 The single case that Dr. Russell cites, *Ford v. Revlon, Inc.*, 153 Ariz. 38, 734 P.2d
24 580 (1987), is not to the contrary.  There, the Arizona Supreme Court held that a
25 company's failure to take appropriate action in response to an employee's complaints
26 about sexual harassment was "extreme" and "outrageous."  *Id.* at 43–44, 734 P.2d at
27 585–86.  Dr. Russell has failed to prove his claims of discrimination and retaliation, let
28

- 9 -

1  alone that MPHC's failure to respond to his complaints was extreme and outrageous.
2  Summary judgment in Defendants' favor is therefore appropriate.
3      IT IS THEREFORE ORDERED that Defendants' motion for summary judgment
4  on all claims (doc. # 43) is granted.
5      IT IS FURTHER ORDERED that the Clerk enter judgment in favor of the
6  Defendants and the Plaintiff take nothing. The Clerk shall terminate the case.
7      DATED this 3rd day of July, 2008.

_____
Neil V. Wake
United States District Judge