1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Larry D. Russell, D.D.S.; Paulette Russell, husband and wife,<br><br>          Plaintiffs,<br><br>vs.<br><br>Mountain Park Health Center Properties, LLC, an Arizona Limited Liability Corporation, L.L.C. doing business as Mountain Park Health Center; Sharon Bader, D.D.S., an individual; John Does I-V; and Black and White Corporations I-V,<br><br>          Defendants. | No. CV 07-0875-PHX-NVW<br><br>**ORDER** |

      Plaintiff Larry D. Russell ("Dr. Russell") brought suit against Defendants after he was terminated from employment at Mountain Park Health Center ("MPHC"). He alleged violations of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-2; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634; 42 U.S.C. § 1981; and the Arizona Civil Rights Act ("ACRA"), A.R.S. §§ 41-1461 through 41-1467. The court granted summary judgment in favor of Defendants on all of these claims on July 3, 2008. (Doc. # 55.) Dr. Russell has now submitted a motion to reconsider that decision. (Doc. # 59.) He does not urge the court to reconsider its decision to grant Defendants summary judgment on his Family and Medical Leave Act, 29 U.S.C. §§ 2601–2654, and state law claims.

**I. Standard on a Motion to Reconsider**

Dr. Russell fails to cite the legal grounds for his motion to reconsider. Presumably, he intends to invoke Rule 60(b) of the Federal Rules of Civil Procedure. Dr. Russell appears to be arguing that the court should reconsider its judgment due to "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The court will proceed on that assumption.

"The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g)(1). "[N]either ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1)." *Allmerica Fin. Life Ins. & Annuity Co. v. Llewellyn*, 139 F.3d 664, 665–66 (9th Cir. 1997) (quoting *Engleson v. Burlington N. R. Co.*, 972 F.2d 1038, 1043 (9th Cir. 1992)).

**II. Defendants Presented Admissible Evidence Supporting Summary Judgment**

Dr. Russell acknowledges that his summary objection to Defendants' statement of facts failed to comply with the Local Rules of Civil Procedure. Nevertheless, he argues that despite his technically deficient response, his objections were actually correct and that the facts asserted by Defendant were "in each instance obviously conclusions and assertions without foundation, and hearsay." (Doc. # 59 at 1.) Dr. Russell is incorrect that the facts asserted by Defendants were obviously inadmissible. The court's independent review of Defendants' evidence did not reveal any obvious defects in its admissibility. Dr. Russell used a single sentence to object on six different grounds to virtually every fact that Defendants asserted. It was not the court's duty to go further and make his arguments for him.

In an attempt to correct the deficiency of his response, Dr. Russell has now submitted a proposed Response and Objections to Defendant's Statement of Facts that details the supposed evidentiary deficiency of each paragraph of Defendants' statement of facts. (Doc. # 59, Ex. A.) His effort comes too late. The court need not rule on each of

1  Dr. Russell's evidentiary objections now.  *See Llewellyn*, 139 F.3d at 665–66 (holding
2  that an attorney's failure to present a defense in its answer was not a basis for relief).

**III.  The Court Properly Applied the Law to the Facts Before It**

Dr. Russell also argues that the court did not apply the proper analysis to the facts. In particular, he complains that requiring a plaintiff to "prove . . . by a preponderance of evidence . . . that race was a factor is not the standard applicable in determining motions for summary judgment in discrimination cases."  (Doc. # 59 at 4.)

The court applied the correct analysis to the facts before it.  Defendants presented a legitimate, nondiscriminatory reason for terminating Dr. Russell—his poor job performance.  Dr. Russell had the burden to provide evidence from which a reasonable jury could conclude that their explanation was actually a pretext for discrimination or impermissible retaliation.  He had to satisfy "the usual standard of proof required in civil cases under Fed. R. Civ. P. 56(c)."  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).  Since Defendants had properly made and supported their motion for summary judgment, Dr. Russell could "not rely merely on allegations or denials in [his] own pleading" but rather had a duty to "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

His response was highly deficient.  His brief did not cite a statement of facts,[1] and his statement of facts did not cite the record.  The court could not consider the naked factual assertions Dr. Russell made in his brief, nor was it required "to scour the record in search of a genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Therefore, the only evidence supporting Dr. Russell's response was his own

---

[1] In fact, there were only two factual citations in the entire brief, neither of which was dispositive on any issue.  One was, "*See* exhibits A, B, C, D, E, and F," which refers to the six pages of hand-written notes that he attached to the brief itself, the contents of which he never explained.  The other was to "(Document LR0009000, Exhibit A)," cited for the proposition that Dr. Bader yelled and screamed at Dr. Russell before he took leave.  However, Exhibit A to Dr. Russell's response never states that Dr. Bader yelled and screamed at Dr. Russell, nor does it even come close to doing so.

- 3 -

1  declaration, and the two paragraphs in his statement of facts that contained citations to the
2  record, all of which the court considered.

3        Dr. Russell now argues that MPHC failed to respond to his complaints of
4  discrimination. However, his responsive brief did not cite any evidence supporting that
5  proposition, nor did he assert such a fact in his statement of facts or in his declaration.
6  Similarly, Dr. Russell now argues that only Dr. Gilbert had decision-making power to
7  hire him, and therefore the court was wrong to have applied the "same actor" doctrine.
8  Dr. Russell did not advance that argument in his responsive brief or assert any such fact
9  in his separate statement of facts or in his declaration. He entirely failed to contradict
10 Defendants' well-supported assertion of fact that the "same people who interviewed and
11 hired Plaintiff . . . recommended his termination." (Doc. # 44 ¶ 23.) Dr. Russell cannot
12 base this motion to reconsider on facts and arguments that were previously available to
13 him but that he never asserted in his response.

14       The only evidence in the record linking any of the allegedly wrongful treatment
15 Dr. Russell endured to race or age were two isolated and ambivalent comments made by
16 Dr. Bader. According to Dr. Russell, Dr. Bader told him that he "reminded her of her
17 father and she had problems with her father, which I didn't know it was a stepfather."
18 (Doc. # 44, Ex. 2 at 107.) That comment simply does not evidence any bias or antipathy
19 towards older people. Dr. Bader also made a race related comment in context of a
20 conflict between Dr. Russell and a hygienist he was supervising. Dr. Russell had
21 arranged to speak with the hygienist after work. Before that meeting, Dr. Bader asked Dr.
22 Russell to come to the back office, and "made the statement that I am a big, black man,
23 I'm intimidating, and she did not want to talk to me." (*Id.* at 105.) The "she" who did not
24 want to talk to Dr. Russell was the hygienist, not Dr. Bader. (*Id.* at 106–07.) Even in the
25 light most favorable to Dr. Russell, the statement about Dr. Russell being "big," "black,"
26 and "intimidating" could only refer to Dr. Bader's evaluation of the reason that the
27 hygienist did not want to speak with Dr. Russell. Taken in context, it could not have
28 referred to Dr. Bader's own antipathy towards Dr. Russell. Neither remark was

1 inherently discriminatory, bigoted, or racist, and they were made almost one year before
2 Dr. Russell's termination.  Dr. Bader's comments are properly characterized as
3 ambivalent "stray remarks," and Dr. Russell failed to provide evidence from which a
4 reasonable jury could conclude that Defendants' explanation for his termination was a
5 pretext for race or age discrimination, or impermissible retaliation.

**IV.  Dr. Russell's Precedent is Inapposite**

The precedent that Dr. Russell cites in his motion to reconsider does not contradict the court's judgment.  With the exception of *White v. Baxter Healthcare Corporation*, ___ F.3d ___, 2008 U.S. App. LEXIS 14188, 2008 WL 2607893 (6th Cir. 2008), all of the precedent he cites was available and able to be cited as supplemental authority well before the court reached its decision.  The court ordinarily denies a motion to reconsider based on such tardy argumentation.  LRCiv 7.2(g)(1).  Even so, the cited precedent is inapposite.  *Gomez-Perez v. Potter*, 128 S. Ct. 1931 (2008), and *CBOCS West, Inc. v. Humphries*, 128 S. Ct. 1951 (2008), have no bearing on the court's order.  The court held that the retaliation claims under the ADEA and 42 U.S.C. § 1981 failed on the merits; it did not hold that the ADEA and § 1981 do not encompass retaliation claims.

Dr. Russell also cites *Davis v. Team Electric Co.*, 520 F.3d 1080 (9th Cir. 2008). There, the plaintiff's prima facie case consisted of a number of incidents that showed that she had been treated differently than her male coworkers.  In contrast, Dr. Russell failed to show that the incidents he complained of had anything to do with race or age.  He did not provide evidence that younger coworkers, or coworkers of a different race, were treated more favorably, and he failed to counter Defendants' convincing race and gender-neutral explanations for each of the incidents. (Doc. # 44 ¶¶ 24–41.)  Instead, his prima facie case of discrimination focused on his termination, and the court held that Russell failed to provide evidence of pretext in that regard.  The court in *Davis* found that her supervisors made numerous discriminatory comments, that she had no female coworkers or supervisors, and that similarly situated male employees were treated more favorably.

- 5 -

*Id.* at 1091–93. In contrast, Dr. Russell's only evidence linking the treatment he received to race or age was Dr. Bader's isolated and ambivalent comments.

*White v. Baxter Healthcare Corporation*, ___ F.3d ___, 2008 U.S. App. LEXIS 14188, 2008 WL 2607893 (6th Cir. 2008), is similarly distinguishable. Unlike the defendant in that case, Defendants here proffered an explanation for Dr. Russell's termination that had a substantial basis in fact and was undoubtedly sufficient to explain their decision to terminate him. Furthermore, Dr. Russell's claims failed even under a mixed-motive analysis because he did not provide evidence from which a reasonable jury could conclude that race or age more likely than not motivated his termination or any of the treatment he received at MPHC. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004) (holding that a mixed-motive plaintiff "may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated" the employment decision).

IT IS THEREFORE ORDERED that Plaintiff Larry D. Russell's Motion to Reconsider (doc. # 59) is denied.

DATED this 30th day of July, 2008.

_____
Neil V. Wake
United States District Judge